IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BRENDA PICKENS and DOROTHY CHAMBERS, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Civil Action No. 2:14-00201-KD-N |
| AMERICAN CREDIT ACCEPTANCE, LLC, | ) ) ) ) | |
| Defendant. | ) | |

## ORDER

Now before the undersigned United States Magistrate Judge is Defendant's Motion to Stay this litigation (for up to six months) pending expected rulings of the Federal Communications Commission (the FCC) pursuant to the primary jurisdiction doctrine (doc. 15), filed August 14, 2014, along with Plaintiffs' Response in Opposition (doc. 18) and the Defendant's Reply (doc. 19).[1]  For the reasons

---

[1] A motion to stay is not case dispositive under 28 U.S.C. § 636(b) and Rule 72 and, as such, may be referred to a Magistrate Judge to address through an order rather than through a report and recommendation to the District Judge. *See, e.g., Ball v. SCI Muncy*, Nos. 1:08–CV–700, etc., 2012 WL 2805019, at *1 (M.D. Pa. July 10, 2012); *accord Hutchins v. Bayer Corp.*, C.A. No. 08–640–JJF–LPS, 2009 WL 192468, at *3 (D. Del. Jan. 23, 2009); *Delta Frangible Ammunition, LLC v. Sinterfire, Inc.*, Civil Action No. 06-1477, 2008 WL 4540394, at *1 n.1 (W.D. Pa. Oct. 7, 2008); *Pass & Seymour, Inc. v. Hubbell Inc.*, 532 F. Supp. 2d 418, 426 n.7 (N.D.N.Y. 2007); *Securities & Exch. Comm'n v. Kornman*, No. 3:04CV1803L, 2006 WL 148733, at *2 (N.D. Tex. Jan. 18, 2006); *Simoneaux v. Jolen Operating Co.*, No. Civ.A.04-2467, 2004 WL 2988506, at *2 (E.D. La. Dec. 15, 2004); *Livingston v. Metropolitan Life Ins. Co.*, No. 7:99CV0231 R, 2000 WL 422242, at *4–5 (N.D. Tex. Mar. 6, 2000); *cf. Moore v. Chuck Stevens Automative, Inc.*, No. CA 1:12–00663–KD–C, 2013 WL 627232, at *1 & n.3 (S.D. Ala. Feb. 20, 2013) (finding a motion to stay and compel arbitration to not be case dispositive; collecting authority, including *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10 (1st Cir. 2010)); *Chatman v. Pizza Hut, Inc.*, No. 12 C 10209, 2013 WL 2285804, at *2 & n.1 (N.D. Ill. May 23, 2013) (finding same; collecting authority,

explained herein, the motion to stay is hereby **ORDERED**.

*Background[2]*

Plaintiffs Brenda Pickens and Dorothy Chambers established a cell phone account in their names in September 2013 (Doc. 18 at 1). Unknown to the plaintiffs, the telephone number attached to this account had previously been provided by a debtor of American Credit Acceptance, LLC ("ACA"), by the name of Elizabeth Mosley. ACA called the plaintiffs' cell phone many times attempting to contact Elizabeth Mosley.

In connection with those calls, Plaintiffs have brought the instant suit alleging, among other items, the violation of the Telephone Consumer Protection Act of 1991 ("TCPA"). Plaintiffs' Complaint (Doc. 1 at 4); *see*, 47 U.S.C. § 227. Plaintiffs allege that Defendant employed an "automatic telephone dialing system" ("ATDS") and an "artificial and prerecorded voice" in calling a cellular telephone, in violation of the statute. *Id.* In defense to these parts of the complaint, Defendant answers that it had the consent of Elizabeth Mosley to call the telephone number in question, as allowed by the statute. Defendant's Answer (Doc. 6 at 11); *see*, 47 U.S.C. § 227.

Proper adjudication of the instant case requires application and interpretation of the part of the TCPA defining what constitutes an ATDS and the determination of how "consent" operates in the statute when a cellular telephone

---

including *Moore*)). Any such order entered by the Magistrate Judge remains reviewable to the extent it is either "clearly erroneous" or "contrary to law." *See* 28 U.S.C. § 636(b)(1)(A); FED. R. CIV. P. 72(a); *see also* S.D. ALA. L.R. 72.3.

[2] Only the facts necessary for the adjudication of this motion are recounted here.

number has been reassigned. The Federal Communications Commission ("FCC") has power to interpret the TCPA (*see*, 47 U.S.C. § 227 ("The Commission shall prescribe regulations to implement the requirements of this subsection.")) and several petitions are now pending before it which Defendant maintains may, in part, answer these questions. Doc. 15 at 2.

## *Primary Jurisdiction*

Primary jurisdiction doctrine applies "whenever enforcement of [a] claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64, 77 S.Ct. 161 (1956). " '[T]he main justifications for the rule of primary jurisdiction are the expertise of the agency deferred to and the need for a uniform interpretation of a statute or regulation.' " *Boyes v. Shell Oil Prods. Co.*, 199 F.3d 1260, 1265 (11th Cir.2000) (quoting *Cnty. of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1310 (2d Cir.1990)). While "[n]o fixed formula exists for applying the doctrine of primary jurisdiction," *United States v. W. Pac. R.R. Co.*, 352 U.S. at 64, "[t]here are four factors uniformly present in cases where the doctrine properly is invoked: (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration." *In re Horizon Organic Milk Plus DHA Omega-3 Marketing and Sales Practice Litigation*, 955 F.Supp.2d 1311, 1348 (S.D. Fla. 2013) (quoting *United*

3

*States v. Gen. Dynamics Corp.*, 828 F.2d 1356, 1362 (9th Cir.1987) (citing *Ricci v. Chi. Mercantile Exch.*, 409 U.S. 289, 93 S.Ct. 573, 34 L.Ed.2d 525 (1973); *Western Pac. R.R.*, 352 U.S. at 59, 77 S.Ct. 161; *United States v. Pac. & Atl. Ry. & Navigation Co.*, 228 U.S. 87, 33 S.Ct. 443 (1913); *United States v. Yellow Freight Sys.*, 762 F.2d 737 (9th Cir.1985))). All four of these factors typically associated with primary jurisdiction are clearly met in the instant case.

*(1) The need to resolve an issue*

The questions which Defendant wishes to have answered during a proposed stay involve the interpretation of two terms in the TCPA. The first question is whether the term "capacity" in the part of the TCPA defining the characteristics of a "automatic telephone dialing system" refers to "present capacity" or "theoretical capacity." Doc. 19 at 3; Doc. 18 at 3; *see* 47 U.S.C. § 227(a)(1). The second question is who the term "called party" refers to in the part of the TCPA detailing the consent exception in a situation where a cell phone number has been reassigned. Doc. 15 at 20; Doc. 18 at 3; *see* 47 U.S.C. § 227(b)(1)(A). Answers to both of these questions are needed to resolve issues in this case. Specifically, Count II of the complaint (doc. 1 at 4) requires that Plaintiffs show that the Defendant utilized *either* an ATDS or an "artificial or prerecorded voice." 47 U.S.C. § 227(b)(1)(A). The same count also requires a decision on whether the "called party" consented, as the consent exception applies to a violation of the prohibition on using either an ATDS or an "artificial or prerecorded voice." *Id.*

*(2) Placed by Congress within the jurisdiction of an administrative body having*

4

*regulatory authority*

The implementation and interpretation of the TCPA have been placed squarely within the jurisdiction of the FCC. *See* 47 U.S.C. § 227(b)(2) ("The Commission shall prescribe regulations to implement the requirements of this subsection.") In response, the FCC has issued rules clarifying and interpreting the TCPA and its regulations. *See, e.g.*, *In re Rules & Regulations Implementing Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Declaratory Ruling, 23 FCC Rcd. 559, 559-60 (2008).

*(3) Pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme*

The TCPA is a comprehensive regulatory scheme governing the use of automated telephone equipment that both parties agree applies to Defendant's ability or inability to call Plaintiffs' cell phone number. *See* Doc. 15 and Doc 18 generally.

*(4) Requiring expertise and uniformity in administration*

The FCC has expertise in the telecommunications area due to the fact that the TCPA and other statutes have been entrusted to its care for interpretation and implementation. *See, e.g.*, 47 U.S.C. § 227; 47 U.S.C. § 201 (Communications Act of 1934); 47 U.S.C. § 160 (Telecommunications Act of 1996). The FCC is more well-suited to decide the question of what constitutes an "automatic telephone dialing system," which is a highly technically question of interpretation within the "special competence of [this] administrative agency." *Boyes*, 199 F.3d at 1265.

Even if this court did have the expertise necessary to decide these questions, piecemeal adjudication of what constitutes "consent" would lead to uneven application of the TCPA. Rather than precipitate the inconsistency that might be created by "judicial interference," (*Boyes*, 199 F.3d at 1265) this court can foster uniformity through "preliminary resort" to the proper administrative body. *See*, *Far. E. Conference v. United States*, 342 U.S. 570, 574 (1952).

*Staying litigation will not prejudice Plaintiffs*

Plaintiffs strongly oppose a stay before discovery has been concluded. Doc. 18 at 4-5, 14. However, the undersigned finds that Plaintiffs will not be prejudiced by this temporary interruption, which will serve to "protect[ ] the administrative process from judicial interference." *Boyes*, 199 F.3d at 1265. Discovery will resume where it left off prior to the stay and may be sharply focused by any decision the FCC makes, promoting efficiency for this court and for Plaintiffs.

*Decisions pending before the FCC*

Plaintiffs' Motion to Stay identifies seven different petitions that are currently pending before the FCC that appear to relate to these issues raised in the instant litigation. However, this court has identified three which speak specifically to the questions necessary for adjudicating this case. The petitions of "Communication Innovators" for a declaratory ruling (Doc. 15-Ex. 13) and the "Professional Association for Customer Engagement" ("PACE") for a declaratory ruling (Doc. 15-Ex. 20) address the meaning of "capacity" in the definition of an ATDS. *See*, 47 U.S.C. § 227(a)(1). The petition of "United Healthcare Services, Inc."

for an expedited declaratory ruling (Doc. 15-Ex. 24) addresses the issue of consent with relation to a reassigned telephone number. *See*, 47 U.S.C. § 227(b)(1)(A). Should the FCC weigh in on these petitions in the next six months, this court will be in a better position to decide the questions presented by the instant case.

## *Conclusion*

Because each of the factors typically associated with the need to stay litigation under the primary jurisdiction doctrine are met in this case and because staying litigation will not prejudice Plaintiffs, it is hereby **ORDERED** that Defendant's Motion to Stay litigation (for up to six months) pending expected decisions by the FCC in "Communication Innovators," "PACE," and "United Healthcare Services, Inc." is **GRANTED**. In the interim, parties are **ORDERED** to file a joint **STATUS REPORT** by the 19th day of each month updating this court on the disposition of the three pertinent FCC decisions identified in this Order.

**DONE** and **ORDERED** this the 19th day of September, 2014.

 */s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**